UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

HEATHER RAVENKAMP,

      Plaintiff,

 v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

      Defendant.

Case No. 3:13-cv-05532-KLS

ORDER AFFIRMING DEFENDANT'S DECISION TO DENY BENEFITS

  Plaintiff has brought this matter for judicial review of defendant's denial of her applications for disability insurance and supplemental security income ("SSI") benefits. Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73 and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. After reviewing the parties' briefs and the remaining record, the Court hereby finds that for the reasons set forth below, defendant's decision to deny benefits should be affirmed.

<u>FACTUAL AND PROCEDURAL HISTORY</u>

  On February 10, 2010, plaintiff filed an application for disability insurance benefits and another one for SSI benefits, alleging in both applications that she became disabled beginning December 31, 2009. See ECF #12, Administrative Record ("AR") 98. Both applications were denied upon initial administrative review on July 7, 2010, and on reconsideration on October 12, 2010. See AR 18. A hearing was held before an administrative law judge ("ALJ") on October 11, 2011, at which plaintiff, represented by counsel, appeared and testified, as did plaintiff's

ORDER - 1

mother and a vocational expert. See AR 39-93.

In a decision dated January 26, 2012, the ALJ determined plaintiff to be not disabled. See AR 18-33.  Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on May 18, 2013, making the ALJ's decision the final decision of the Commissioner of Social Security (the "Commissioner"). See AR 1; 20 C.F.R. § 404.981, § 416.1481.  On July 9, 2013, plaintiff filed a complaint in this Court seeking judicial review of the Commissioner's final decision. See ECF #3.  The administrative record was filed with the Court on October 16, 2013. See ECF #12.  The parties have completed their briefing, and thus this matter is now ripe for the Court's review.

Plaintiff argues defendant's decision to deny benefits hould be reversed and remanded for further administrative proceedings, because the ALJ erred: (1) in not fully adopting the medical opinions from Michael Corpolongo, Ph.D., and Norma L. Brown, Ph.D.; and (2) in rejecting the lay witness evidence from plaintiff's mother.  For the reasons set forth below, however, the Court disagrees that the ALJ erred as alleged and thus in determining plaintiff to be not disabled, and therefore finds defendant's decision to deny benefits should be affirmed.

## DISCUSSION

The determination of the Commissioner that a claimant is not disabled must be upheld by the Court, if the "proper legal standards" have been applied by the Commissioner, and the "substantial evidence in the record as a whole supports" that determination. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); see also Batson v. Commissioner of Social Security Admin., 359 F.3d 1190, 1193 (9th Cir. 2004); Carr v. Sullivan, 772 F.Supp. 522, 525 (E.D. Wash. 1991) ("A decision supported by substantial evidence will, nevertheless, be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.")

ORDER - 2

(citing <u>Brawner v. Secretary of Health and Human Services</u>, 839 F.2d 432, 433 (9th Cir. 1987)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (citation omitted); <u>see</u> also <u>Batson</u>, 359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record."). "The substantial evidence test requires that the reviewing court determine" whether the Commissioner's decision is "supported by more than a scintilla of evidence, although less than a preponderance of the evidence is required." <u>Sorenson v. Weinberger</u>, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). "If the evidence admits of more than one rational interpretation," the Commissioner's decision must be upheld. <u>Allen v. Heckler</u>, 749 F.2d 577, 579 (9th Cir. 1984) ("Where there is conflicting evidence sufficient to support either outcome, we must affirm the decision actually made.") (quoting <u>Rhinehart v. Finch</u>, 438 F.2d 920, 921 (9th Cir. 1971)). [1]

I.  The ALJ's Evaluation of the Opinions of Dr. Corpolongo and Dr. Brown

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. <u>See</u> <u>Reddick v. Chater</u>, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. <u>Sample v. Schweiker</u>, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." <u>Morgan v.</u>

---

[1] As the Ninth Circuit has further explained:

> . . . It is immaterial that the evidence in a case would permit a different conclusion than that which the [Commissioner] reached. If the [Commissioner]'s findings are supported by substantial evidence, the courts are required to accept them. It is the function of the [Commissioner], and not the court's to resolve conflicts in the evidence. While the court may not try the case de novo, neither may it abdicate its traditional function of review. It must scrutinize the record as a whole to determine whether the [Commissioner]'s conclusions are rational. If they are . . . they must be upheld.

<u>Sorenson</u>, 514 F.2d at 1119 n.10.

ORDER - 3

Commissioner of the Social Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." Id. at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id. The ALJ also may draw inferences "logically flowing from the evidence." Sample, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31. However, the ALJ "need not discuss *all* evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. See Lester, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and

ORDER - 4

inadequately supported by clinical findings" or "by the record as a whole." Batson v. Commissioner of Social Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); see also Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830-31. A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

With respect to the opinions of Dr. Corpolongo and Dr. Brown, the ALJ found:

> Following [a state agency] psychological evaluation of the claimant in June 2010, Dr. Corpolongo assessed a [global assessment of functioning ("GAF")] score of 52[2], suggesting moderate symptoms. He opined that the claimant's mental impairments caused marked limitations in her ability to interact appropriately in public contacts, but no limitation to moderate limitations in all other areas of cognitive and social functioning. Exhibit 31F/4-5.
>
> Following [a state agency] psychological evaluation of the claimant in January 2011, Dr. Brown assessed a GAF score of 55, suggesting moderate symptoms. She opined that the claimant's mental impairments caused no limitation to marked limitation in cognitive and social factors. Exhibit 32F/3-4.
>
> The above opinions of Dr. Corpolongo and Dr. Brown are give[n] partial weight. There is nothing in their findings or the overall objective record supporting that the claimant had marked limitations in any area of cognitive or social functioning. The opinions that the claimant had marked limitations were based solely on the claimant's self-reports of lack of motivation, that she would not go out alone, that she would not go out in public unless it was an emergency and that she got "stressed out in public." The assessment of marked limitations was not supported by objective findings and Dr. Corpolongo and Dr. Brown did not observe those symptoms. Additionally, it is inconsistent with the GAF scores, which indicate only moderate symptoms.

---

[2] A GAF score is "a subjective determination based on a scale of 100 to 1 of 'the [mental health] clinician's judgment of [a claimant's] overall level of functioning.'" Pisciotta v. Astrue, 500 F.3d 1074, 1076 n.1 (10th Cir. 2007) (citation omitted). It is "relevant evidence" of the claimant's ability to function mentally. England v. Astrue, 490 F.3d 1017, 1023, n.8 (8th Cir. 2007). "A GAF of 51-60 indicates '[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers).'" Tagger v. Astrue, 536 F.Supp.2d 1170, 1173 n.6 (C.D.Cal. 2008) (quoting American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* (Text Revision 4th ed. 2000) ("DSM-IV-TR") at 34).

ORDER - 5

> Thus, the opinions that the claimant had marked limitations are given little weight. The reminder of Dr. Corpolongo's and Dr. Brown's opinions are given great weight as they were supported by objective findings and consistent with the other objective evidence of record.
>
> Following her July 2011 [state agency] evaluation, Dr. Brown assessed a GAF score of 60, suggesting moderate, almost mild, symptoms. She opined that the claimant's impairments caused no limitation in her cognitive functioning and moderate limitations in social functioning. Exhibit 33F. These opinions are given significant weight. They are entirely supported by objective findings and the claimant's own reports of her functioning.

AR 29-30. Plaintiff argues these are not legally sufficient reasons for discounting the opinions of Drs. Corpolongo and Brown. The Court disagrees.

Plaintiff takes issue with the ALJ's statement that nothing in either medical source's clinical findings or the overall objective medical evidence in the record supports the marked mental functional limitations they assessed, but rather those limitations appear to be based solely on her subjective complaints. See Morgan, 169 F.3d at 601 (physician's opinion premised to large extent on claimant's own accounts of her symptoms and limitations may be disregarded where those complaints have been properly discounted). But it is clear that the comments Dr. Corpolongo and Dr. Brown offered in support of those marked limitations are based on what plaintiff herself reported, and the evaluation reports contain little in the way of psychological testing findings, mental status examination results or Dr. Corpolongo's and Dr. Brown's own observations to support them.[3] See AR 607-29. Given that plaintiff has not challenged the ALJ's determination that she was not fully credible concerning her subjective complaints,[4] the ALJ did not err in declining to adopt the marked limitations they assessed.[5]

---

[3] See Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987 (opinion based on clinical observations supporting diagnosis of depression is competent psychiatric evidence); Clester v. Apfel, 70 F.Supp.2d 985, 990 (S.D. Iowa 1999) (mental status examination results provide basis for psychiatric disorder diagnosis, just as results of physical examination provide basis for diagnosis of physical illness or injury).

[4] See AR 26-29; Carmickle v. Commissioner of Social Sec. Admin., 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (issue not argued with specificity in briefing will not be addressed); Paladin Associates., Inc. v. Montana Power Co., 328

ORDER - 6

Plaintiff further asserts that in stating there is no support for these limitations in the medical evidence in the record overall, the ALJ failed to take into account the objective findings that are consistent therewith.  For example, plaintiff points to an April 19, 2010 letter from Jo Anne Hall, MFT, in which Ms. Hall gave her a GAF score of 45[6], and opined that her mental health symptoms "seriously impair her ability to function in social or other situations requiring her to leave her home." AR 368-69.  While the Court agrees the ALJ committed error in failing to mention or discuss this letter, as it constitutes significant probative evidence, the Court also finds that error to be harmless.

An error is harmless only if it is "inconsequential" to the ALJ's "ultimate nondisability determination." Stout v. Commissioner, Social Security Admin., 454 F.3d 1050, 1055 (9th Cir. 2006); see also Parra v. Astrue, 481 F.3d 742, 747 (9th Cir. 2007) (finding any error on part of ALJ would not have affected "ALJ's ultimate decision.").  Such is the case here, given that the ALJ likely would not have given any weight to the opinion and GAF score of Ms. Hall for the same reasons he rejected the marked limitations assessed by Drs. Corpolongo and Brown.  That is, Ms. Hall clearly based them on plaintiff's own self-reporting. See AR 368-69.  In addition, the ALJ gave "great weight" to the late May 2010 opinion of T. Renfro, Psy.D., an "acceptable

---

F.3d 1145, 1164 (9th Cir. 2003) (by failing to make argument in opening brief, objection to district court's grant of summary judgment was waived); Kim v. Kang, 154 F.3d 996, 1000 (9th Cir.1998) (matters on appeal not specifically and distinctly argued in opening brief ordinarily will not be considered).

[5] Plaintiff also has not challenged the inconsistency between the marked limitations assessed and the moderate level of restriction indicated by the GAF scores Dr. Corpolongo and Dr. Brown gave noted by the ALJ.  Discrepancies between a medical opinion source's functional assessment and that source's clinical notes, recorded observations and other comments regarding a claimants capabilities "is a clear and convincing reason for not relying" on the assessment. Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005); see also Weetman v. Sullivan, 877 F.2d 20, 23 (9th Cir. 1989).

[6] "A GAF score of 41-50 indicates '[s]erious symptoms . . . [or] serious impairment in social, occupational, or school functioning,' such as an inability to keep a job." Pisciotta, 500 F.3d at 1076 n.1 (quoting DSM-IV-TR at 34); see also Cox v. Astrue, 495 F.3d 614, 620 n.5 (8th Cir. 2007) ("[A] GAF score in the forties may be associated with a serious impairment in occupational functioning.").

ORDER - 7

medical source"[7] – a finding plaintiff does not contest – who assessed a GAF score of 55 and at most only mild specific mental functional limitations. See AR 30, 605-06. The same is true in regard to the other medical treatment records relied on by plaintiff. See ECF #14, p. 7 (citing AR 440, 444, 468-69).[8] Accordingly, the Court finds no reversible error here.

II.     The ALJ's Evaluation of the Lay Witness Evidence in the Record

Lay testimony regarding a claimant's symptoms "is competent evidence that an ALJ must take into account," unless the ALJ "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001). In rejecting lay testimony, the ALJ need not cite the specific record as long as "arguably germane reasons" for dismissing the testimony are noted, even though the ALJ does "not clearly link his determination to those reasons," and substantial evidence supports the ALJ's decision. Id. at 512. The ALJ also may "draw inferences logically flowing from the evidence." Sample, 694 F.2d at 642.

With respect to the lay witness evidence in the record, the ALJ found as follows:

> The claimant's mother Janet Ravenkamp, with whom the claimant lived, testified at the hearing. She stated that she knew the claimant had problem [sic] with anxiety because she slept a lot; Ms. Ravenkamp felt that the claimant's excessive sleeping was connected to anxiety. The claimant also got very depressed, and she had had an anxiety attack in the car while Ms. Ravenkamp was driving in California in 2007. Ms. Ravenkamp had been in California with the claimant at that time because the claimant was having panic attacks when she was married to her ex-husband; she had been to California twice to bring the claimant home since 2001. Ms. Ravenkamp related that after her husband had passed away in 2001, the claimant became

---

[7] Ms. Hall is not an "acceptable medical source" as that term is defined in the Commissioner's regulations, and thus her opinion may be given less weight than that of Dr. Renfro. See Gomez v. Chater, 74 F.3d 967, 970-71 (9th Cir. 1996); 20 C.F.R. § 404.1513(a), (d), § 416.913(a), (d) (licensed physicians and licensed or certified psychologists are "acceptable medical sources").

[8] These treatment records do contain some objective clinical findings as well, such as pressured speech and thought content that was phobic, obsessive and ruminative (see AR 444, 469), but they hardly show plaintiff suffers from the level of marked functional limitation found by Dr. Corpolongo and Dr. Brown.

ORDER - 8

> very depressed because he was the only father she had really known.  Then there was "a switch in her," and all of a sudden she started having panic attacks in stores; she could not breathe and Ms. Ravenkamp thought she was having a heart attack.  When the claimant had a panic attack, Ms. Ravenkamp had to "talk her down" and tell her to calm down.  In the past, the claimant had called Ms. Ravenkamp from work when she was having a panic attack, and Ms. Ravenkamp would "talk her through them."  Ms. Ravenkamp believed the claimant was having about two to three panic attacks a week, they lasted about 20 to 30 minutes of [sic] longer, depending on "her state of mind at the time."  Ms. Ravenkamp said that before the claimant came to live with her, they were in "constant contact"; they had talked on the phone two or three times a day, even when she was living only three miles away.  She also went to the claimant's home to help her with household chores and try to get her "motivated."  The claimant had never lived alone without her help.
>
> Ms. Ravenkamp's statements are unsupported by the objective record and the claimant's own reported level of functioning, discussed above.  Additionally, the undersigned notes that Ms. Ravenkamp may have had secondary gain issues, as the claimant lived in her home and she might benefit if the claimant was awarded Social Security benefits.  For those reasons, the undersigned gives little weight to Ms. Ravenkamp's statements.

AR 31.  Plaintiff argues and the Court agrees that the ALJ erred in rejecting Ms. Ravenkamp's testimony on the basis of potential secondary gain issues, as there is no indication that she was actually motivated by such issues in this case. See Valentine v. Commissioner Social Security Administration, 574 F.3d 685, 694 (9th Cir. 2009) (ALJ's reliance on "broad rationale" that wife of claimant "was an interested party" to reject her testimony "contradicts our insistence that, regardless of whether they are interested parties, 'friends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to her condition'") (quoting Dodrill v. Shalala, 12 F.3d 915, 1918-19 (9th Cir. 1993)).

Nevertheless, the Court finds the ALJ properly rejected Ms. Ravenkamp's testimony on the basis that in was unsupported by other evidence in the record.  While plaintiff insists her mother's testimony is consistent with the marked mental functional limitations assessed by Dr. Corpolongo and Dr. Brown, as discussed above the ALJ did not err in rejecting them. See

ORDER - 9

Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005) (inconsistency with medical evidence constitutes germane reason); Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001) (ALJ properly discounted lay testimony that conflicted with available medical evidence); Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir. 1984).[9] In addition, although plaintiff also insists his mother's testimony is consistent with her own self-reports, again plaintiff has not challenged the ALJ's determination that she herself was not fully credible concerning her subjective complaints. As such, here too the ALJ did not err.

---

[9] Plaintiff relies on Bruce v. Astrue, 557 F.3d 1113 (9th Cir. 2009), to argue it was improper for the ALJ to rely on the medical evidence in the record to reject her mother's testimony. It is true that in Bruce, the Ninth Circuit held that the claimant's wife's testimony could not be discredited "as not supported by medical evidence in the record." Id. at 1116. In so holding, the Ninth Circuit in Bruce relied on its prior decision in Smolen, which held that the ALJ improperly rejected the testimony of the claimant's family on the basis that medical records did not corroborate the claimant's symptoms, because in so doing the ALJ violated the Commissioner's directive "to consider the testimony of lay witnesses where the claimant's alleged symptoms are *unsupported* by her medical records." Bruce, 557 .3d at 1116 (citing 80 F.3d at 1289) (emphasis in original). The Court of Appeals, however, did not address its earlier decisions in Bayliss, Lewis and Vincent, in which, as noted above, it expressly held that "[o]ne reason for which an ALJ may discount lay testimony is that it conflicts with medical evidence." Lewis, 236 F.3d at 511 (citing Vincent, 739 F.2d at 1995); see also Bayliss, 427 F.3d at 1218. Accordingly, although Bruce is the Ninth Circuit's most recent pronouncement on this issue, given that no mention of Bayliss, Lewis or Vincent was made in that case, and that none of the holdings in those earlier decisions concerning this issue were expressly reversed, it is not at all clear whether discounting lay witness evidence on the basis that it is not supported by the objective medical evidence in the record is no longer allowed. In addition, the undersigned agrees with the reasoning employed by United States Magistrate Judge Mary Alice Theiler to distinguish Bruce:

> As asserted by [defendant], the Ninth Circuit's decision in *Bruce* can be distinguished. In that case, the Court rejected as improper the ALJ's reasoning that the lay testimony was "not supported by the objective medical evidence." 557 F.3d at 1116. The ALJ in *Bruce* did not point to any specific evidence, contradictory or otherwise, in support of this conclusion. Instead, the ALJ *appeared to discount in general the value of lay testimony in comparison to objective medical evidence*. *Smolen*, cited in *Bruce*, can be similarly distinguished. In that case, the Court noted that the claimant's disability was based on fatigue and pain, that the medical records were "sparse" and did not "provide adequate documentation of those symptoms[,]" and that . . . the ALJ was consequently required to consider the lay testimony as to those symptoms. 80 F.3d at 1288-89. The ALJ in *Smolen*, therefore, had erred in rejecting the lay testimony because " 'medical records, including chart notes made at the time, are far more reliable and entitled to more weight than recent recollections made by family members and others, made with a view toward helping their sibling in pending litigation.' " *Id.* at 1289. As in *Bruce*, the ALJ *essentially rejected the value of lay testimony as compared to objective medical evidence*.

Staley v. Astrue, 2010 WL 3230818 * (W.D. Wash. 2010) (emphasis added). Likewise, here the ALJ discounted Ms. Ravenkamp's testimony because of its inconsistency with other evidence in the record, including the objective medical evidence discussed above, and not because she found in general the evidentiary value of her testimony to be less than that provided by the objective medical evidence.

ORDER - 10

## CONCLUSION

Based on the foregoing discussion, the Court hereby finds the ALJ properly concluded plaintiff was not disabled. Accordingly, defendant's decision to deny benefits is AFFIRMED.

DATED this 16th day of May, 2014.

Karen L. Strombom
United States Magistrate Judge

ORDER - 11